FILED 13 JUL 12 11:50 USDC-ORM

# In the district court of the United States

CASE #: 1:13-cv-01147-[PA]

U.S. Code, Title 28, Section 1651
**Objection in the Nature of a Writ of Quo Warranto**
in aid of the lawful jurisdiction of the court; and
**Proceeding in the Nature of a Writ of Prohibition**
to enjoin certain acts without statutory authority; and
regarding improper Senior Judge assignment to
Jefferson Mining District, *et al* v. Kitzhaber, *et al.*
EXPEDITED

**The United States of America,**

*ex rel,*

**Jefferson Mining District, *et al*,**

v.

**Mary L. Moran**, Clerk of Court.

and

**Owen M. Panner**, Senior Judge.

**1)** Referencing the Case assignment notice, in pertinent part:

U.S. District Court District of Oregon (Medford (1))
CIVIL DOCKET FOR CASE #: 1:13-cv-01147-PA

Jefferson Mining District et al v. Kitzhaber et al
Assigned to: Judge Owen M. Panner
Cause: 28:1331 Fed. Question
Date Filed: 07/09/2013
Jury Demand: None
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

> 07/09/2013 2 Notice of Case Assignment: This case is assigned to Judge Owen M. Panner. (ljb) (Entered: 07/10/2013)

**2)** Jurisdiction is based on U.S. Code, Title 28, Section 1651, in aid of the courts lawful authority and jurisdiction.

**3)** The United States of America being the grantee of the disposed land, including the mineral estate, on public domain and trustee as to its ongoing disposition maintains a unique and close relationship obligation which it is required to vindicate and protect.

**4)** Petitioners, *ex relator*, files this Objection in the nature of an writ of quo warranto and writ of prohibition to immediately challenge the authority in the respective offices of the Mary L. Moran, Clerk of Court, to assign and of Owen Panner, Senior Judge, to accept the petitioned matter and to enjoin the assignment and any actions of Owen Panner, a senior judge, a ministerial officer, that the statutes indicate he is without judicial Power under the Constraints of the Constitution for the United States of America, Article Three, regarding the establishment, Power, and composition required of the petition for emergency injunction filed 07/09/2013 by the Relators, Jefferson Mining District, *et al*.

**5)** The surprise assignment by the Clerk and time being a prejudice against a more complete and comprehensive response, it is clear, merely "acting as" an Article Three officer instead of an assignment of the petition for injunction to an actual constitutional Article Three, Judge, is not warranted. Therefore, the United States of America requires and so petitions a court of competent jurisdiction for a Writ in the nature of *Quo Warranto* to issue upon Mary L. Moran, Clerk of Court, to misrepresent the record as evidenced in the Docket notice, or to assign, and Owen M. Panner, Senior Judge to accept assignment as a *bona fide* Judge commissioned under Article Three of the Constitution for the United States of America to demonstrate by what lawful authorities each claims the right in the respective office to act.

**6) Warrant Challenges to Office:**

**I ) Of the Clerk of Court:**

**A)** Was and how so is it within the lawful discretion of the Office of the Clerk of Court to assign a "Senior Judge", an officer having retired his commission for payment, rather than as petitioner invoke upon a matter requiring Article Three establishment and composition, i.e., an officer in "regular active service" presiding?

**B)** Was and how so is it within the authority of the office of the clerk to assign a senior judge in light of the petition clearly requiring an Article Three Judge, without consultation with the petitioners to find out whether or not there might be any harm in doing so or for prejudice to their status and law?

**C)** In leaving the assignment of the hearing of the petitioner to a Senior Judge to stand, has the Clerk of Court exposed the Petitioners to additional and prejudicial delay, expense, and hardship, of an imperative remedy, or susceptible to a future challenge to the lawful authority and jurisdiction supporting any order in favor of the petitioners for injunction, and if not, why or how not?

**D)** Show warrant that it is within the authority office of the Clerk to i), misrepresent the record, ii), misdirect the case to a court not competent to hear a matter as petitioned, iii), mischaracterize the petitioners to diminish their actual status, or, iv), make designations of record that without further explanation appear to prejudice the cause and remedy the petitioners seek?

**E)** What official authority does the Clerk of Court have to misrepresent Jefferson Mining District as resident in a state it has no residence when transferring the matter to a United States District Court in Medford where no Article Three Judge presides and no district court of the United States exists as declared by statute, reference district court 28 USC 88 *et seq* and notes?

**F)** Explain how the treatment resorted to has not prejudiced the Relator or as petitioner.

**II) Of the Office of the Senior Judge:**

**A)** Was and how so is it within the discretion of the officer of the Senior Judge, whose judicial duties are to attend to a United States District Court, to accept for disposal a matter requiring the judicial Power of an Article Three court and Judge?

**1)** To establish Owen Panner's authority to answer with a warrant, being the Relators have no evidence available proving lawful official existence. produce evidence of:

      (i)     A Presidential Commission;
      (ii)    A Senate Confirmation;
      (iii)   An Appointment Affidavit;
      (iv)   An Oath of Office.

**B)** Notwithstanding the lawfulness of the assignment, the Relator challenges the assignment on the grounds of prejudice or conflict of interest with the defendant of petitioner's injunction:

**7) Statutory Support Providing the Foundation Requiring the Writ and therefore the lack of warrant of the respondents:**

**8)** By the Statutes enacted by Congress, Owen Panner is no longer a district judge with a judgeship or in regular active service, entitled to hold court pursuant to 28 USC 132(b):

> "(b) Each district court shall consist of the district judge or judges for the district in regular active service. Justices or judges designated or assigned shall be competent to sit as judges of the court."

**9)** Owen M. Panner retired his commission and duty of mandatory or "regular active service" on July 28, 1992, and no longer has a congressionally authorized "judgeship".

**10)** A retired judge is known and designated as a "senior judge", 28 USC 294(b):

> "Any judge of the United States who has retired from regular active service under section 371(b) or 372(a) of this title shall be known and designated as a senior judge...".

**11)** Upon retirement the seat a district judge occupies is vacated being replaced, ostensibly, pursuant to 28 USC 371(d), that: "The President shall appoint, by and with the advice and consent of the Senate, a successor to a justice or judge who retires under this section."

**12)** The original intent of the 1869 act was to prevent judges from remaining in office despite mental or physical infirmity. See Johnson v. United States, 79 F. Supp. 208, 210-11 (1948).

**13)** Active judges are obligated by statute to perform judicial duties. Every Supreme Court Justice, circuit judge, and district judge must regularly sit as part of a permanent court, which by statute must regularly hold sessions.

**14)** By contrast a retired Senior Judge has discretion over his caseload.

**15)** Senior judges do not occupy seats; instead, their seats become vacant, and the President may appoint new full-time judges to fill their spots, successors to the seat of judicial Power.

**16)** Without a judgeship, a former office holder retains no judicial Power under Article Three of the Constitution for the United States of America.

**17)** Moreover, United States Code Title 28 Section 371, and related statutes, enforced as assignment to include a "senior judge" cognizable to Article Three are an unconstitutional delegation of judicial Power to a former federal office holder, and as they prejudicially affect the Relator's remedy to enjoin the defendants in the related matter.

> When a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes expressly depriving him of jurisdiction, judicial immunity is lost. Zeller v. Rankin, 101 S.Ct. 2020, 451 U.S. 939, 68 L.Ed 2d 326.

**18)** Senior judges do not "retain the office" of "district judge" that they were Commissioned by the President for, and are not known or designated by their previous title of office after retirement, 28 USC 294(b). The Clerk deciding contrary to the law to assign a senior judge and not an Article Three Judge as required by the Cause of the Relator's emergency petition, is denying Relator's right to have a competent judicial hearing pursuant to Article Three of the Constitution for the United States of America.

**19)** And this really is the crux of the matter for the Relators. It is more succinctly stated with regard to the future avoidance of any order that it be overturned on a simple technicality on review, that "If the statute made him incompetent to sit at the hearing, the decree in which he took part was unlawful, and perhaps absolutely void, and should certainly be set aside or quashed by any court having authority to review it by appeal, error or certiorari.
...Accordingly, his participation contravened the statutory requirements set by Congress for the composition of the federal courts of appeals." Nguyen v United States, 539 U. S. 69.

**20)** The clerk is without official authority to enforce a future avoidance by imposing a ministerial officer without judicial power to make any order dispositive of the Relators substantial cause.

**21)** But even if the statutes didn't run contrary to the Clerk's arbitrary and capricious assignment, the Relators have another problem with the assignment of Senior Judge Panner as to his very close affiliations with the related defendant's organized and extended network. Owen Panner's conflict of interest with those defendant to the petition for injunction is materially relevant to the petition for injunction and his arbitrary and capricious assignment by the Clerk to the case.

**22)** The Bar Association and the network of the Defendant's, including Lewis and Clark law School and other consensus promoting centers of "higher learning" are included defendants for purposes of injunction.

**23)** As retrieved from Wikipedia for Owen Panner:
"In 1987, he was named Lewis & Clark Law School's distinguished honorary alumni.[4]"
4. Lewis & Clark Law School: The Honorable Owen M. Panner. Lewis & Clark College. Retrieved on June 9, 2008.

**24)** From Lewis and Clark law school website:
"Panner is a life trustee of Lewis & Clark College and is the recipient of the Law School's 1987 Distinguished Honorary Alumni" and "Panner is the past President of the Central Oregon Bar Association"

**25)** OSB Membership Directory:
Hon Owen M Panner
Bar Number    500876
Status  Inactive
Admit Date    9/18/1950

**26)** Furthermore, Senior Judge, Owen Panner, and the Medford District Court, "made the radar" of Jefferson Mining District because of some decisions against miners which were outright indefensible were the mining law applied *para materia,* respectful of a miner's actual property and rights. These unsupportable decisions are either as exposed in the Petition for Injunction of the Relators, born of a ideological conflict of interest, an ignorance of the *para materia* interpretation of the Mining Law as identified by judge Lindley in around the 1930's, or both; Any of which condition is not conducive with justice for the Relators or those similarly situated

or which fulfill the obligations of the United States of America to the Relators or as petitioner.

**27)** By the evidence freely available, it is clear that Owen Panner has an undisclosed extreme conflict of interest with Mineral Estate Grantees, and Jefferson Mining District by extension, being he is intrinsically, intimately connected to those the Relators have identified as being a part of an extortion network organized and operating under color of authority of the state of Oregon sued through the Defendants, Kitzhaber, et al, for arrest through injunctive relief.

**28)** This is the same organized corrupt cabal which has refined the method of using the color of authority of the state, as identified in the Relator's Petition for Injunction, to harm property possessors such as congressional mineral estate grantees of the United States of America.

**29)** It is because of the lack of respect by the state legislatures, administrators, and the courts for the Mining Law that congressionally acknowledged Relator, Jefferson Mining District, is compelled to assert its authority and jurisdiction upon the matter to vindicate the obligations of the United States of America to the Relators or for petitioners for an injunction.

**30)** The wrongful assignment by the Clerk of a compromised senior judge is, to say the least, prejudicially interfering with the lawful hearing of the Relator's emergency petition for injunction; The Relators are required to deal with the obstruction to a court of competent jurisdiction and lawful composition instead of focus upon the chosen judicial remedy:

> In pertinent part, 28 USC § 2071 - Rule-making power generally
> a) Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title.
> (f) No rule may be prescribed by a district court other than under this section.
>
> 28 USC § 2072 - Rules of procedure and evidence; power to prescribe
> **b) Such rules shall not abridge, enlarge or modify any substantive right.**

**31)** Even if the Clerk can find lawful warrant to assign and senior judge and Panner were to be able to lawfully accept the assignment, there is another matter related to the docket entries, the clerk misrepresenting the court the petitioners invoked for their injunctive remedy.

**32)** The United States District Courts ("USDC") are legislative courts typically proceeding in legislative mode. See American Insurance v. 356 Bales of Cotton, 1 Pet. 511, 7 L.Ed. 242 (1828) (C.J. Marshall's seminal ruling); and Balzac v. Porto Rico, 258 U.S. 298, 312 (1922) (The USDC is not a true United States court established under Article III.) See 28 U.S.C. §§ 88, 91, 132, 152, 171, 251, 458, 461, 1367. Legislative courts are not required to exercise the Article III guarantees required of constitutional courts. See Keller v. Potomac Electric Power Co., 261 U.S. 428 (1923); Federal Trade Commission v. Klesner, 274 U.S. 145 (1927); Swift v. United States, 276 U.S. 311 (1928); Ex parte Bakelite Corporation, 279 U.S. 438 (1929); Federal Radio Commission v. General Electric Co., 281 U.S. 464 (1930); Claiborne-Annapolis Ferry Co. v. United States, 285 U.S. 382 (1932); O'Donoghue v. United States, 289 U.S. 516 (1933); Glidden Co. v. Zdanok, 370 U.S. 530 (1962); Northern Pipeline Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982); 49 Stat. 1921.

> For a court to pronounce upon a law's meaning or constitutionality when it has no jurisdiction to do so is, by very definition, an ultra vires act. Steel Co. v. Citizens For A Better Environment, 118 S.Ct. 1003, 1012–16 (1998).

**33)** The decision of BALZAC v. PEOPLE OF PORTO RICO, 1922, is instructive, in that:

> "[7, 8] The United States District Court is not a true United States court established under article 3 of the Constitution to administer the judicial power of the United States therein conveyed. It is created by virtue of the sovereign congressional faculty, granted under article 4, § 3, of that instrument, of making all needful rules and regulations respecting the territory belonging to the United States. The resemblance of its jurisdiction to that of true United States courts, in offering an opportunity to nonresidents of resorting to a tribunal not subject to local influence, does not change its character as a mere territorial court."

**34)** For the purposes of the Petition for Injunction filed 07/09/2013 an Article Three Judge of "regular active service" is required by the cause of the petition to be convened in an Article Three court instead of the Article I court as is indicated by the title of the court, "U. S. District Court" in the docket notice.

**35)** All of these reasons are why Relators here petitioners to the injunctive relief filed with the Chief Judge of the district of Oregon in Eugene, being the honorable Judge Aiken it is thought could have invoked a district court of the United States had the need for justice required a district court of the federal circuit being a court of general jurisdiction, having "nationwide jurisdiction" be convened outside of its normal situs, or transferred, pursuant to 28 USC § 1631 - Transfer to cure want of jurisdiction, or 28 U.S.C. § 1404 - Change of venue to the competent court of jurisdiction pursuant to statute, see 28 USC 88 and 91; see notes or otherwise required.

**36)** And being contrary to the mischaracterization that the Relators petition for injunction was a "Federal Question" when actually it is as the petitioners instructed in the cover sheet, a contract matter; the express or implied contracts appurtenant a congressional grant disposal of soil, the local USDC court, Eugene, may have had jurisdiction to immediately enter a temporary injunction to preserve status quo pending transfer, not to Medford, Oregon, USDC, but to the district court of the United States for the federal circuit having nationwide jurisdiction.

**37)** Being a foreign state, statutorily, Jefferson Mining District does not reside in the district of Oregon any more that the United States resides in a State of the Union. Jefferson Mining District does not do business in the State of Oregon and was not established under the laws of the state, though the defendants to the petition for injunction adversely affecting the authority and jurisdiction of Jefferson Mining District do.

**38)** There is no official authority for the Clerk of Court to misrepresent Jefferson Mining District as resident in a state it has no residence when transferring the matter to a United States District Court in Medford where no Article Three Judge presides in a district court of the United States as declared by statute and where the defendants are adversely affecting the entire judicial district.

**39)** The Respondents shall immediately act, or desist, as the law requires and "Show Cause" why the directives to conform to the law should not be made permanent.

**40)** Accordingly, in deference to applicable laws, and the emergency need, by and through the Relators, the United States of America hereby moves a court of competent jurisdiction for a lawful Writ in the nature of Quo Warranto, properly issued by the Clerk upon **Mary L. Moran**, Clerk of Court, to demonstrate by what lawful authorities (if any) she claims to assign a senior judge to a matter requiring an Article Three Judge, and what authority she has to misrepresent the record or prejudice the status and remedy petitioned by and for the Relators before a district court of the United States, and **Owen M. Panner**, Senior Judge, to demonstrate by what lawful authorities (if any) he claims to exercise the judicial Power of the United States under Article Three of the Constitution for the United States of America, and each answer to the relevant questions and subparts at the beginning of the petition at "Warrant Challenges to Office", within 2 days.

**41)** Further, that in the case of a failure to show warrant the officer shall be prohibited from further acting contrary to the law or prejudicing the Relators here and petitioners for the remedy of injunction and to take the corrective action required and consistent with the emergency need of the Relator in their Petition for Injunction filed 07/09/13.

**42)** The office of the Clerk of Court having no power to wrongly assign other than an Article Three Judge of lawful current commission as the cause of the petitioners require, the office of Senior Judge neither in "Regular Active Service" commission, 28 USC 132(b), 28 USC 294(b), or to docket the matter in a court of other than lawful Article Three establishment and Power, the assignment and acceptance not authorized in law shall be enjoined with assignment to a court of competent jurisdiction and composition as petitioned, and the respondents further prohibited from violating the law.

43) VERIFICATION

I, Ron Gibson, Sui Juris, *ex rel*, the duly elected Officer of Jefferson Mining District, a foreign state, in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, without the "United States", that the above statement of facts and laws in the above entitled **Objection in the Nature of a Writ of Quo Warranto**; and **Proceeding in the Nature of a Writ of Prohibition** is true and correct, according to the best of my current information, knowledge, and belief, pursuant to 28 U.S.C. 1746(1).

                     Executed on July 11, 2013, A.D.

*Ron Gibson* (signature)

Ron Gibson.
Interim Chairman, Jefferson Mining District.
Mineral Estate Grantee, Assemblyman,

PO Box 400
Rogue River, Oregon

//
//
//
//
//
//
//

## Certificate of Service

I certify serving this **Objection in the Nature of a Writ of Quo Warranto**; and
**Proceeding in the Nature of a Writ of Prohibition** on the federal court Chief Judge of the district of Oregon by first class mail sent to:

**Honorable Chief Judge Ann Aiken**
Chambers Information
2100 United States Courthouse
405 East Eighth Avenue
Eugene, Oregon 97401-2706
Chambers (541) 431-4140


And the following for service of process by Certified Mail, return receipt requested,

**Mary L. Moran**
Clerk of Court
Wayne L Morse U.S. Courthouse
405 East Eighth Ave.
Eugene, OR 97401.
# 7012   3460   0000   3458   6054

and

**Owen M. Panner**
Chambers Information
United States Courthouse
310 West Sixth Street
Medford, Oregon. 97501-2710.
Chambers: (541) 608-8760
# 7012   3460   0000   3458   6047

_____ July 11, 2013.
Ron Gibson,
Jefferson Mining District, a foreign state,
Interim Chairman, Jefferson Mining District;
Mineral Estate Grantee, Assemblyman.
PO Box 400
Rogue River, Oregon
(541) 621-5548

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

7012 2720 0000 3458 6054

Sent To: **Mary L. Moran**
Clerk of Court
Street, or PO B: Wayne L Morse U.S. Courthouse
City, Sta: 405 East Eighth Ave.
Eugene, OR 97401

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

7012 2720 0000 3458 6047

Sent To: **Owen M. Panner**
Chambers Information
Street, or PO B: United States Courthouse
City, Sta: 310 West Sixth Street
Medford, Oregon 97501-2710